GETTY ET AL., APPELLEES, *v.* SCHOLZ HOMES, INC., APPELLANT.
GETTY ET AL., APPELLANTS, *v.* SCHOLZ HOMES, INC., APPELLEE.

(Nos. 5934 and 5935—Decided June 16, 1965.)

*Messrs. Boggs, Boggs & Boggs*, for plaintiffs.
*Messrs. Shumaker, Loop & Kendrick* and *Mr. Robert B. Gosline*, for defendant.

GUERNSEY, J.   These appeals are from an action in the Court of Common Pleas of Lucas County brought by Getty and Littell against Scholz Homes, Inc., for commissions alleged to be due to them by reason of the sale of house packages prefabricated by the defendant.

Plaintiffs' petition as amended during trial alleged, among other things, that they were partners employed as salesmen by the defendant, assigned "exclusive territory, including Butler County, Pennsylvania, and were to be paid a commission of five per cent (5%) on all gross sales shipped into their territory and/or a commission of five (5) per cent upon orders solicited on behalf of Scholz Homes, Inc., for products of Scholz Homes, Inc., sold by the defendant in the exclusive territory hereinbefore referred to upon orders solicited and/or submitted by the plaintiffs," "that as a direct result of their efforts, and as a direct result of orders solicited and/or submitted by the plaintiffs there was sold and delivered by the defendant into Butler County, Pennsylvania, houses whose gross sales prices were at least equal to $378,406.00," and that "there is due them as commissions from said defendant five per cent (5%) of the gross sales prices of the aforesaid houses sold and delivered into plaintiffs' territory, in the amount of at least $18,920.30."

As the exact amount of the alleged sales was unknown to the plaintiffs at the time of filing their original petition, they prayed for an accounting and recovery of their commissions as determined by the accounting. However, in answer to interrogatories annexed to the plaintiffs' reply, the gross amount of the sales was stated as being 210 house packages, at $378,-406.00. These matters being established, the cause was tried to a jury as an action at law on an express contract, and will be so considered by this court.

At the close of the evidence the trial court instructed the jury, among other things, "that from the evidence you will determine what the sales contract or agreement between the plaintiffs and the defendant was, what it provided and what at the time of the contract the meeting of the minds of the parties was as to the facts and circumstances in controversy here over the sales made in the Fernway Project."

The jury specially found that the plaintiffs submitted orders to the defendant for 210 house packages sold by the defendant to Fernway Development, Inc., and rendered a general verdict for the plaintiffs in the amount of $18,920.30. Judgment being entered on this verdict, the defendant moved, under the provisions of Section 2323.18 et seq., Revised Code, for judgment notwithstanding the verdict and also moved for a new trial. Upon

consideration, the court overruled the former motion and sustained the latter. In its order sustaining the motion for new trial the court found that the "special findings of the jury and the verdict and judgment based thereon are entirely unsupported by the evidence and are therefore contrary to law." It is from the order overruling the motion for judgment notwithstanding the verdict that the defendant has appealed in case number 5934, and it is from the order sustaining the motion for new trial that the plaintiffs have appealed in case number 5935.

It is undisputed in evidence that the relationship of the parties and the plaintiffs' right, if any, to commissions are based on an express contract in effect at the time of the sales herein involved, which provides, among other things, as follows:

"1. *Territory*:

"a.) Effective January 1, 1957, and continuing for a period of one year from this date you may, and agree to, solicit orders *for our products* from customers located in the below described territory:

"* * *, Butler, * * * counties in the Commonwealth of Pennsylvania. * * *

"* * *.

"2. *Commissions*:

"a.) For all services as above mentioned, we shall pay you the following commissions *upon orders submitted by you*:

"1. Five per cent (5%) of the net package price * * *.

"* * *.

"b.) In the event that Scholz Development Corporation is instrumental in establishing an active building program within your territory, a commission rate as outlined below will be paid to you on this building program.

"1. If you initiate a project in your territory which is carried out by the Development Corporation, and you service the builder, your commission on house shipments will be 2%.

"2. If a project in your area is initiated by the Development Corporation *or someone in the management of the Scholz organization*, but you service the builder, your commission will will be 1-½%.

"3. If a project in your territory is neither initiated by you nor serviced by you, you will get a 1% commission.

334

"* * *.

"* * *.

"6. *Approval of Orders*:

"The company reserves the right to accept or reject any orders submitted to it, and *it shall not be liable to you* or anyone else *for its refusal or failure to accept any order submitted.* You agree to inform prospective customers of such reserved right, and to not bind the company with respect to the filling or acceptance of orders. *The company shall only be obligated upon orders accepted by it at its home office.*

"* * *." (Emphasis added.)

It is also undisputed in evidence that Fernway Development, Inc., was a corporation controlled by or subordinate to the Dover Construction Company, which was a corporation controlled by Harold Gootrad, Davis Gootrad and Henry Lefkowitz, which latter company was preceded by a partnership called the Dover Company and made up of the same principals; that Dover Company and Dover Construction Company had previously developed and sold an area known as the Dover Bay Project located west of Cleveland, constructing thereon high price homes from packages fabricated by Scholz Homes, Inc.; that thereafter the same principals and/or companies developed low cost housing areas west and east of Cleveland using prefabricated home packages constructed in their own factory located in the Cleveland area; that Scholz Homes, Inc., had proposed to fabricate a low cost housing package for use in one of these areas but could not meet the cost figures of the developers; that Donald Scholz, president of defendant corporation, accompanied the Gootrads and Lefkowitz to Pennsylvania where they met with the plaintiffs who were then advised by Scholz that these developers were considering establishing a higher priced housing development near Pittsburgh using Scholz home packages and that the plaintiffs should assist them in doing so; that such proposed development was thereafter abandoned by the developers; that they thereupon became interested in developing for low cost housing a tract of land located in Butler County, Pennsylvania, thereafter known as Fernway, proposing to construct some 327 houses thereon; and that plaintiff Getty, who was also a real estate broker and a notary pub-

lic, was instrumental in obtaining the land for such project and assisted in the subdividing thereof.

The plaintiffs testified that the developers promised them that all the homes built at Fernway would be built from packages prefabricated by the defendant, although at that time Scholz did not have designed or in production any similar low cost home packages; that the developers had given to Getty an order, which was submitted by him to Donald Scholz, for two model homes to be prefabricated on the developers' plans together with a deposit check in the amount of $200, reserving in such order, however, the right to cancel it if the home packages could not be produced and sold to the developers at an agreeable price; and that, though requested to do so, they had never waived any commissions.

Harold Gootrad, who was the only representative of the developers testifying, stated that they had had no plans to use Scholz home packages in their low cost Fernway development, had not promised to do so, and had not submitted any order for any model home packages; that the records of their five corporations existing at that time had been searched and no record of any such order for model homes or of any deposit check therefor could be found; and that the home packages thereafter supplied by defendant for the Fernway development were supplied as a result of negotiations with the developers initiated by Donald Scholz, were built on plans drawn by an architect employed by the developers, and based on a cost breakdown determined by the developers in their fabrication of similar low cost homes erected near Cleveland.

Donald Scholz testified that no order or check was ever submitted by the plaintiffs to him for the two model homes as alleged by them; that the records of defendant had been searched and there was no record of such order or record of any such deposit check; that he was not aware of the intention of the developers to erect low cost housing in the vicinity of Pittsburgh until advised thereof by one of the plaintiffs after the developers had conducted their opening sale at Fernway and sold their lots and houses to interested customers showing them the two model homes then erected from home packages fabricated at the Cleveland factory of the developers; that thereafter in an effort

to establish Scholz Homes, Inc., in the low cost housing field, and upon waiver by the plaintiffs of their commissions, defendant agreed to fabricate the necessary house packages for the developers using the developers' cost figure determined by similar fabrication in their Cleveland plant; that such cost figure was met knowing that there might be some loss in order that the defendant would have the favorable publicity necessary to assist it in selling similar packages to other builders at a higher and profitable price; and that, notwithstanding these intentions, the losses were so great at the time 210 of these packages had been fabricated, amounting to about $45,000, that the directors of the defendant decided that fabrication of such packages be terminated, which was thereupon done with the agreement of the developers.

The procedure of an appellant taking an appeal from an order overruling his motion for judgment notwithstanding the verdict, even though he has had a favorable ruling on his motion for a new trial, has been recognized in Ohio for many years. *Massachusetts Mutl. Life Ins. Co.* v. *Hauk*, 72 Ohio App. 131. See, also, *Michigan-Ohio-Indiana Coal Assn.* v. *Nigh, Admx.*, 131 Ohio St. 405. Under these circumstances, the appeal from the order overruling the motion for judgment notwithstanding the verdict should be determined before consideration is given to the appeal from the order sustaining the motion for new trial.

In its appeal from the order overruling motion for judgment notwithstanding the verdict the defendant claims error of the trial court in denying its motion. Under the provisions of Section 2323.18, Revised Code, judgment should be rendered in favor of the movant whenever, "upon the statements in the pleadings or upon the evidence received upon the trial, or both, * * * [the movant] is entitled by law to judgment in his favor." Under these circumstances the trial court could not commit ·error prejudicial to the defendant unless the defendant was entitled, as a matter of law, to judgment dismissing the plaintiffs' petition. Conversely, the defendant would not be entitled to judgment, as a matter of law, if the evidence is sufficient to justify recovery by the plaintiffs on any theory raised by the pleadings. See 49 Corpus Juris Secundum 165, Judgments, Section 60b (3). The fact that the verdict is excessive to the amount proved does not warrant judgment for defendant not-

withstanding the verdict, as long as the plaintiffs would have been entitled on the evidence and on the cause of action stated to judgment in their favor for a lesser amount. See 49 Corpus Juris Secundum 175, Judgments, Section 60g. As the granting of judgment notwithstanding the verdict would be *res judicata* of all rights of recovery on any theory on the cause of action stated, a motion for judgment notwithstanding the verdict should be denied where the evidence tends to prove some right of recovery in the plaintiffs on that cause of action, although such evidence would be insufficient to prove a right of recovery of the full amount of the verdict as found by the jury.

It is the opinion of this court in the instant case that the rights of the parties are determined by an express contract and that the terms of such contract are clear and unambiguous. Such being so, the jury was not entitled to "determine what the sales contract or agreement between the plaintiffs and the defendant was," etc. Under the provisions of this contract there were two types of commission to which the plaintiffs might become entitled. The first type of commission was in the amount of five per cent on orders for defendant's products from customers located in Butler County submitted by the plaintiffs, or either of them, and accepted by defendant at its home office. The second type of commission (under paragraph 2 b of the contract) arose from active building programs in the salesman's territory initiated by the salesman, or by the Scholz Development Corporation, or by "someone in the management of the Scholz organization," and constructed by a "builder" outside the organization. The latter commission would vary from 2% to 1½%, or to 1%, dependent upon who initiated the project and upon who serviced the project.

Although upon the evidence herein a court might have properly concluded that the plaintiffs had not submitted orders for products of the defendant which were accepted by the defendant and were, therefore, not entitled to a 5% commission, there was substantial evidence of probative value upon which a jury might have found that the plaintiffs were entitled, if they had not waived same, to either a 1½% commission or a 1% commission on the fabricated house packages furnished for the Fernway development. The evidence of waiver being conflicting also presented a jury question which could not be de-

cided by the court against plaintiffs as a matter of law. It matters not that the petition alleged a right to recover a 5% commission, for such percentage had to be alleged originally in the absence of knowledge by the plaintiffs of the gross sales figure, and upon amendment of the petition during trial it became surplusage. The cause of action was for commissions payable to the plaintiffs under the provisions of an express contract, and on such cause of action they were entitled to recover whatever commission was due to them whether computed on a 5% basis or upon some other percentage. The use of the 5% rate would not bar them from recovery at a lesser rate any more than the statement of a fixed figure for damages would bar them from recovery of a lesser figure actually proved by the evidence.

We conclude that the defendant was not entitled to judgment as a matter of law and that the trial court did not commit error in denying its motion for judgment notwithstanding the verdict of the jury.

Coming then to consider the appeal from the order sustaining the motion for a new trial, we find that plaintiffs assign as error that the trial court abused its discretion in so doing.

Notwithstanding that the case of *Price* v. *McCoy Sales & Service, Inc.*, 2 Ohio St. 2d 131, establishes that an order granting a new trial is a final appealable order without the showing of an abuse of discretion by the trial court, the action of the trial court in sustaining a motion for new trial on the ground of insufficiency of the evidence still rests solely within its sound discretion and is not reversible unless there has been an abuse of that discretion. Where the evidence is such that the case must be submitted to a jury to find for either the plaintiff or the defendant, and where the trial court is convinced that there is insufficient credible evidence to sustain a judgment upon the verdict of the jury, the trial court may grant not more than one new trial for that reason. *Poske* v. *Mergl*, 169 Ohio St. 70.

As appears from the evidence hereinbefore set forth and from our previous discussion the trial court acted properly in concluding that there was insufficient evidence to support a verdict for commissions based on 5% of the gross sales involved, for the reason that the plaintiffs had not done all those things required by the contract for them to do in order

to qualify for the 5% commissions. On the other hand, there was substantial evidence of probative value presenting a jury question on whether the plaintiffs were entitled to commissions in a lesser amount. Under these circumstances the trial court did not abuse its discretion and did properly exercise its discretion in ordering a new trial on the motion of the defendant.

We also observe that had the trial court not done so this court would have been required to grant a new trial for the errors of the trial court prejudicial to defendant in instructing the jury "that from the evidence you will determine what the sales contract or agreement between the plaintiffs and the defendant was," etc., and in its submitting the case to the jury on a verdict form for the plaintiffs in the amount of $18,920.30, which effectively prevented the jury from finding for the plaintiffs in any lesser amount. On these grounds alone we would have to conclude that the judgment of the trial court granting a new trial should be affirmed.

This court having found no prejudicial error of the trial court in either of the appeals, the respective judgments appealed from are affirmed.

*Judgments affirmed.*

SMITH and BROWN, JJ., concur.

GUERNSEY, J., of the Third Appellate District, sitting by designation in the Sixth Appellate District.